UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
WILLIAM O'BRIEN,

                Plaintiff,

- against -

DAVID A. HANSELL, in his Capacity as the
Commissioner of The New York State Office of
Temporary and Disability Assistance, and
ROBERT DOAR, in his Capacity as the
Commissioner of The New York City Human
Resources Administration,

                Defendants.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
09-CV-629 (RRM)(JO)

**MAUSKOPF, United States District Judge.**

Plaintiff William O'Brien brings this action pursuant to 42 U.S.C. § 1983 for declaratory and injunctive relief for alleged violations of the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and, pursuant to this Court's supplemental jurisdiction, for violations of the Due Process Clause of Article 1, §6 of the New York State Constitution, Section 413(1) of the New York Family Court Act, and the Official Compilation of Codes, Rules, & Regulations of the State of New York title 18, § 347(9)(e)(2). Defendants move to dismiss the Complaint and for judgment on the pleadings for, *inter alia*, failure to state a claim. For the reasons set forth below, the Court grants the Defendants' motions, and Plaintiff's Complaint is dismissed.

## BACKGROUND

Plaintiff, 52, is a resident of Brooklyn, and a child support obligor/debtor with emancipated children who owes arrears of approximately $50,000. Defendant David A. Hansell, Commissioner of the New York State Office of Temporary and Disability Assistance (the "OTDA"), is responsible for the supervision of enforcement of child support obligations via the

New York State Office of Child Support Enforcement, a bureau within the OTDA. Defendant Robert Doar, Commissioner of the New York City Human Resources Administration (the "HRA"), is responsible for the supervision of child support obligations within New York City.

Plaintiff is a Social Security recipient with monthly payments of $739 in 2008 and $787 at the time he filed his Complaint. Plaintiff and his wife had three children between 1977 and 1981, but Plaintiff's marriage ended sometime prior to 1993, when Plaintiff was ordered to pay child support in the amount of $267 every two weeks. In May 1997, Plaintiff sought a downward modification in the amount of his payments due to his unemployment. While that petition was pending, he was struck by a car and severely injured, going into a coma. Although Plaintiff emerged from the coma, he claims to suffer from severe signs and symptoms of traumatic brain injury, which causes him great difficulty in organizing his thoughts, remaining focused, picking up social cues, following instructions, and controlling his emotions. Following his injury, Plaintiff became homeless for a number of years starting about 1998.

As a result of his injuries, Plaintiff failed to appear at the downward modification hearing scheduled after his initial petition, but the family court magistrate nevertheless modified the child support order on March 31, 1998 to $100 every two weeks. In June 2002, Plaintiff petitioned the Family court to terminate his child support obligations because his children were all adults. That motion was granted on December 12, 2002, but Plaintiff still owed significant arrears on his child support payments. With counsel, Plaintiff filed another petition for a downward

2

modification retroactive to 1997 on the grounds that his income was below the self-support reserve[1] from 1997 onward, and that his injuries had prevented him from seeking a downward modification prior to June 2002. On June 13, 2003, the family court magistrate hearing Plaintiff's petition issued a "finding of fact" that Plaintiff, as of January 1, 2002, lived below the self-support reserve, but that there was insufficient evidence to show that he was incapable of filing a petition for a downward modification prior to June 2002. Accordingly, an order was entered on August 29, 2003 terminating Plaintiff's child support obligations, but fixing his arrears at $48,937, to be paid in a manner "to be determined by the Support Collection Unit." (Compl. (Doc. No. 1) ¶ 52.)

Plaintiff's monthly Social Security payment is electronically deposited into his Dime Savings Bank account on the third of each month. Plaintiff uses this money to pay for rent, food, and other necessities, usually spending the entire amount each month. On April 3, 2008, Plaintiff received a Social Security payment of $739. On April 11, 2008, Plaintiff's bank account, with a balance of $2.38, was restrained by the Defendants. On April 21, 2008, Plaintiff received a "Notice to Judgment Debtor/Obligor of Restraining Notice," dated April 11, 2008. The notice

---

[1] As discussed more fully below, *infra* at 10, the self-support reserve is defined by the New York Family Court Act as "one hundred thirty-five percent of the poverty income guidelines amount for a single person as reported by the federal department of health and human services." N.Y. Fam. Ct. Act § 413(1)(b)(6). Plaintiff alleges that this was $1,219 monthly in 2009. (Compl. ¶ 1.)

advised Plaintiff that money or property of his might have been restrained to satisfy child support arrears. It advised him that unless he filed a written objection within fifteen days, an execution notice would be issued to take the restrained money or property. The notice provided that "YOU MAY ASSERT A MISTAKE OF FACT IF YOU THINK YOU DO NOT OWE THE ARREARS OR YOU MAY CLAIM THAT YOUR MONEY OR PROPERTY SHOULD NOT BE USED TO SATISFY ANY ARREARS BECAUSE IT IS EXEMPT (see below for more information.)" (*Id.* ¶ 63.) The notice explained that "the following types of money or property are always exempt from the payment of . . . child support arrears: 1. Supplemental Security Income ("SSI"); 2. Public assistance (welfare); and 3. Alimony or child support." (*Id.* ¶ 64.)

On April 28, 2008, Plaintiff contacted South Brooklyn Legal Services ("SBLS") for assistance in responding to the notice of restraint. On May 3, 2008, Plaintiff's next monthly Social Security payment was electronically deposited into his bank account, which was still frozen. On May 5, 2008, an SBLS attorney (counsel for Plaintiff in this case) faxed a letter with supporting documents to the New York City Office of Child Support Enforcement requesting that Plaintiff's account be released from restraint because Plaintiff lived below the self-support reserve, and that his only income, Social Security, was regularly deposited into his bank account. Plaintiff alleges that at the time this request was made he was distressed by his lack of money, and had to seek assistance from friends and acquaintances to survive. On or about May 9, 2008,

approximately twenty-eight days after the initial restraint, Plaintiff's account was released and Plaintiff regained access to his account.

On or about October 10, 2008, Plaintiff's account, with a balance of $0.19, was restrained for a second time by the Defendants. On October 22, 2008, Plaintiff received a notice of restraint identical to the one he had earlier received in April 2008. On October 24, 2008, Plaintiff again contact SBLS for assistance, and on October 30, 2008, SBLS faxed a similar letter to that sent previously to the New York City Office of Child Support Enforcement asking them to release the account. Plaintiff's account was released on November 3, 2008, approximately thirteen days after it had been restrained. Plaintiff alleges that he is fearful that his account will be restrained again. He also alleges that he lives in poverty, and that even when his account is not restrained, he needs to go to food pantries and soup kitchens for food.

Plaintiff filed his Complaint in this Court on February 13, 2009, alleging that Defendants violated his due process rights under the United States and New York Constitutions by restraining his bank account in an attempt to collect arrears owed by Plaintiff on his child support payments without advising him that the income in his account, which derived solely from recurring Social Security payments, might be exempt from collection pursuant to the self-support reserve exemption. Plaintiff also argues that Defendants violated his due process rights, Section 413(1) of the New York Family Court Act, and the Official Compilation of Codes, Rules, & Regulations of the State of New York title 18, § 347.9(e)(2) by restraining his bank account a

first time in April 2008 without having first obtained evidence refuting or at least bringing into question the validity of the 2003 Family Court finding that Plaintiff was living below the self-support reserve, and violated the same provisions in restraining his bank account a second time in October 2008 without determining that his income or assets were above the self-support reserve.

Plaintiff seeks a declaration that the Notice to Judgment Debtor/Obligor of Restraining Notice authored by the OTDA and issued by the HRA is unconstitutional because it violates his due process rights under the United States and New York Constitutions, and that the Defendants' practice of restraining Plaintiff's bank account without regard to previous findings that he lives below the self-support reserve is unconstitutional and also violates Section 413(1) of the New York Family Court Act and the Official Compilation of Codes, Rules, & Regulations of the State of New York title 18, § 347.9(e)(2). Plaintiff also seeks to enjoin Defendants to implement procedures to ensure that a child support obligor/debtor with emancipated children receives notice of his right to seek the release of a restrained account when he lives below the self-support reserve. Plaintiff also seeks to enjoin the Defendants to implement procedures preventing them from restraining his bank account unless they first obtain evidence suggesting that he has income above the self-support reserve. Finally, Plaintiff seeks to recover actual damages resulting from Defendants' restraint of his account.

Defendants now move separately to dismiss Plaintiff's Complaint and/or for judgment on the pleadings. Defendant Hansell moves to dismiss, arguing that the Complaint fails to state a claim against him, that the Eleventh Amendment to the United States Constitution bars any claim for damages or for past violations of federal law, and finally that, in any case, New York law does not impose a self-support reserve limitation on restraining notices and executions to enforce child support obligations, and thus Plaintiff's claims founded on the existence of such a limitation are without merit. Defendant Doar moves for judgment on the pleadings, arguing that Plaintiff lacks standing to bring his Complaint, that Plaintiff fails to state a claim because the HRA is authorized by statute to restrain Plaintiff's bank account under the circumstances of this case and using the notice at issue, and that Defendant Doar, in any case, was not personally involved in the restraint of Plaintiff's bank account.

## LEGAL STANDARDS

I. **Standards Applicable to Motions To Dismiss and for Judgment on the Pleadings**

Defendants move to dismiss Plaintiff's Complaint under both Federal Rule of Civil Procedure 12(b)(6) and Rule 12(c). However, in deciding a Rule 12(c) motion for judgment on the pleadings, courts apply the same standard as that applicable to a motion to dismiss for failure to state a claim under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the non-moving party. *See LaFaro v. New York Cardiothoracic Group, PLLC*, 570 F.3d 471, 475–76 (2d Cir. 2009).

In deciding a Rule 12(b)(6) motion, a complaint should be dismissed only if it does not contain sufficient allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007). The Second Circuit has explained that, after *Twombly*, the Court's inquiry under Rule 12(b)(6) is guided by two principles. *Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009) (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009)). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 129 S.Ct. at 1950.

## II. Statutory and Regulatory Framework Governing Child Support Obligations

A non-custodial parent has an obligation to support his or her child, and, "if possessed of sufficient means or able to earn such means, shall be required to pay for child support a fair and reasonable sum as the court may determine." N.Y. Fam. Ct. Act § 413(1)(a). Federal law

8

requires that states wishing to receive federal welfare funds establish administrative agencies to, *inter alia*, enforce child support debts. 42 U.S.C. § 654.

In New York, the New York State Office of Temporary and Disability Assistance, Division of Child Support Enforcement, supervises the child support enforcement program in the State. N.Y. Soc. Servs. Law § 111-b(1). Each local social services district, through a Support Collection Unit ("SCU"), is required to take all steps necessary to establish, collect, and enforce child support orders. *Id.* §§ 111-c, 111-h. In New York City, the Office of Child Support Enforcement, part of the HRA, is the SCU that enforces child support orders entered in the five counties that constitute the City of New York.

Once a child support order has been entered, the local SCU establishes an account for the named child support debtor, the terms of which are established by the order of support. *Id.* § 111-h(1). Any past due support is treated as a judgment by operation of law, 42 U.S.C. § 666(a)(9)(A), and is enforceable in the same manner as a judgment, N.Y. C.P.L.R. 5101. The SCU has various methods of enforcing child support arrears, including, *inter alia*, (1) the issuance of income executions for child support enforcement, see 42 U.S.C. § 666(a)(1), (8), (b); N.Y. C.P.L.R. 5241, and (2) the imposition of child support liens against real and personal property and seizure of assets, bank accounts, and insurance settlements, see 42 U.S.C. §§ 666(a)(4), (c)(1)(G); N.Y. Soc. Servs. Law §§ 111-t, 111-u; N.Y. C.P.L.R. 5222.

In attempting to collect child support arrears under either of the two methods noted, certain limits are placed on the SCU. For example, welfare and Supplemental Security Income cannot be garnished for arrears, see N.Y. Fam. Ct. Act §§ 413(1)(a)(5)(vii)(e), (f); likewise, money will not be taken from a bank account via a property execution if the money in the account derives from welfare, SSI, or child-support payments. N.Y. C.P.L.R. 5205(c), (d). Additionally, New York recognizes a self-support reserve whereby the SCU must reduce the amount of additional child support it attempts to collect from a child support arrears debtor via income execution, over and above current child support due, if collection of that additional amount would reduce the debtor's remaining income below the self-support reserve.[2] N.Y. Code, Rules, & Regs. Tit. 18, § 347.9(e)(2). The statutes and regulations governing property execution, however, do not contain any similar reference to the self-support reserve. *Cf. id.* § 346.11 (limiting debtor's defense to mistake of fact); N.Y. C.P.L.R. 5222(k) (clarifying that certain restrictions on property execution do not apply when the debt enforced is for child support arrears); *see also infra*, Discussion, Part II.

---

[2] Plaintiff alleges that in 2009 this amount was $1,219 per month. *Supra*, note 1.

# DISCUSSION

## I. Plaintiff Has Standing To Assert His Claims

Defendant Doar asserts that Plaintiff lacks standing to bring this action in federal court. As it is axiomatic that federal courts may only decide cases in which the plaintiff establishes an actual case or controversy, this Court must first satisfy itself that Plaintiff has standing. *See Lujan v. Defenders of Wild Life*, 504 U.S. 555, 559 (1992). To satisfy Article III's standing requirements, a plaintiff must show (1) that he has suffered an injury in fact that is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the challenged action of the defendants; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 560. The party invoking federal jurisdiction bears the burden of establishing these elements. *Id.*

As noted by Plaintiff, "Injury in fact is a low threshold, which [the Second Circuit] ha[s] held 'need not be capable of sustaining a valid cause of action,' but 'may simply be the fear or anxiety of future harm.'" *Ross v. Bank of Am., N.A.*, 524 F.3d 217, 222 (2d Cir. 2008) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)). Here, Plaintiff alleges that he was deprived of his property for a total of forty-one days, and that during that time he had to seek loans and charity in order to survive. He also was forced to contact an attorney in order to have his account unfrozen on two occasions. And, while Doar minimizes the amount of money held in the frozen account, the facts alleged in the complaint, taken as true for the purposes of deciding these motions, establish that Plaintiff was deprived of his entire Social Security

payment of $739 for five days in April 2008. Even the taking of small amounts of property can satisfy the injury in fact test. *See, e.g., Wash. Legal Found. v. Legal Found. of Wash.*, 271 F.3d 835, 848–50 (9th Cir. 2001) (holding that plaintiff who suffered the loss of a small amount of escrow interest had standing to assert Fifth Amendment takings claim), *aff'd*, 538 U.S. 216 (2003). Moreover, Plaintiff alleges that he suffered additional injuries because he could not access his account, including the need to borrow money to pay for food, and fear and anxiety arising out of his inability to access his sole source of income. Accordingly, Plaintiff has met the first part of the standing test. Because Doar does not challenge Plaintiff's ability to meet the other elements of the standing requirement, and because this Court finds that Plaintiff has established both causation and redressability, Plaintiff has standing to bring this Complaint. However, for the reasons below, Plaintiff's claims fail.

## II. Plaintiff Fails To State A Claim Because New York State Law Does Not Impose A Self-Support Reserve Limitation on Restraining Notices and Executions To Enforce Child Support Obligations

Plaintiff grounds all of his claims on the erroneous assertion that the self-support reserve applicable to income garnishment must also apply to property restraint and execution. Plaintiff bases his argument on an overly-broad reading of U.S. Supreme Court cases holding that exemption statutes should be "liberally construed," *Porter v. Aetna Cas. & Surety Co.*, 370 U.S. 159, 161 (1963), and that "technicalities" in the functioning of the banking system should not defeat the purpose of the exemption statutes, *id.* (*See* Pls.' Mem. (Doc. No. 21) at 13–16 (also

12

citing *Philpott v. Essex County Welfare Bd.*, 409 U.S. 413, 417 (1973) (applying the holding of *Porter* to Social Security benefits)). Defendants correctly distinguish the cases cited by Plaintiff, however, by noting that each dealt with an exemption embodied in federal law that applied comprehensively to certain categories of payments (such as veterans' benefits or social security benefits), and not, as here, to a state law created reserve attempting to generally protect impoverished, non-custodial parents from financial hardship when paying child support.

As discussed above, state and federal law authorize the restraint and seizure of the personal property of child support debtors, including bank accounts, to enforce child support debts. 42 U.S.C. § 666(a)(4), (c)(1)(G)(2); N.Y. C.P.L.R. 5222; N.Y. Soc. Serv. Law § 111-t. The categories of money that are exempt from restraint, execution, or levy for child support enforcement are set forth in the N.Y. Civil Practice Law and Rules ("CPLR"). *See* N.Y. C.P.L.R. 5205 (exempting (1) Supplemental Security Income, (2) public assistance, including employment earnings considered in calculating the public assistance grant, and (3) child support, spousal support, maintenance, or alimony payments). Social Security payments, such as those received by Plaintiff and at issue here, are not exempt from alienation for child support debts. *See* 42 U.S.C. 659(h); N.Y. Soc. Servs. Law § 111-t. Challenges to notices of restraint may only be challenged on the basis of mistake of fact. *See* N.Y. C.P.L.R. 5222(f); N.Y. Comp. Codes R. & Regs. tit. 18, § 346.11(d)(5), (e).

There is no limitation on restraint or seizure of personal property based on the child support obligor's income level, Plaintiff's arguments to the contrary notwithstanding. Plaintiff cites only to the state statute and regulations applicable to income execution as support for his claim that the self support reserve applies to restraining notices. (*See* Pls.' Mem. at 13 (citing N.Y. Fam. Ct. Act § 413(1)(g); N.Y. Code, Rules, & Regs. tit. 18, § 347.9(e)(2)).) Moreover, while Plaintiff argues that the Supreme Court has "twice ruled that the exempt character of statutorily exempt payments is not lost when exempt money is deposited into an account, provided it remains available for daily use and the debtor needs the money for daily expenses," his argument fails because the moneys at issue here never were exempt. (Pls.' Mem. at 14.)

For example, in *Porter*, the exempt character of veterans' benefit payments, which pertained even after they were deposited into a bank account, was not lost simply because of the "technicality" that deposit into a savings and loan account was made by purchase of shares in the savings and loan that could be converted into liquid funds. 370 U.S. at 161–62. The Court's holding turned on its focus in the earlier case of *Trotter v. Tennessee*, 290 U.S. 354 (1933), on whether the benefit funds "lost the quality of moneys" and were converted into "permanent investments," or whether, instead, the funds were equivalent to moneys and used for the support and maintenance requirements of the debtor. *Porter*, 370 U.S. at 161–62. The Court also relied on its prior jurisprudence regarding the Congressional intent that exemption legislation "should

14

be liberally construed to protect funds granted by the Congress for the maintenance and support of the beneficiaries thereof," *id.* at 162, to hold that the deposits at issue should remain inviolate.[3]

Here, however, as discussed above, both state and federal law allow Social Security payments to be restrained and executed in fulfillment of child support arrears. The only policy identified by Plaintiff to the contrary is a creation of the New York Legislature, and specifically applies only to income executions, and not to restraints of personal property. This distinguishes the instant case from *Porter* and *Philpott*, and argues against accepting Plaintiff's invitation to rewrite the New York child support laws. This is especially so in light of the New York legislature's recent amendment of the CPLR provisions governing property executions to specifically exempt from restraint and execution the first $2,500 of statutorily exempt payments, N.Y. C.P.L.R. 5222(h), or the first $1,740 of any moneys in the debtors account, N.Y. C.P.L.R. 5222(i), *except* when "the debt enforced is for child support, spousal support, maintenance or alimony," N.Y. C.P.L.R. 5222(k), in which case the new restrictions do not apply. Given this clear evidence of the Legislature's intent, the Court finds no support for Plaintiff's argument that the self-support reserve should be extended to protect from restraint and execution Social

---

[3] Notably, veterans' benefit payments are not exempt from attachment or seizure once deposited in a bank account if the debt to be enforced is one for child support. *See Rose v. Rose*, 481 U.S. 619 (1987); *see also* 42 U.S.C. § 659(h)(1) (allowing Social Security payments to be withheld to enforce child support obligations).

Security payments deposited into a child support debtor's bank account. Accordingly, Plaintiff's claims must be dismissed.

## CONCLUSION

For the foregoing reasons, it is ORDERED that Defendants' motions to dismiss and for judgment on the pleadings are GRANTED in full, and the Complaint is DISMISSED.[4]

SO ORDERED.

Dated: Brooklyn, New York
March 31, 2010

ROSLYNN R. MAUSKOPF
United States District Judge

---

[4] Because this Court finds that Plaintiff has failed to state a claim, it is unnecessary to address Defendants' additional arguments that (1) Plaintiff's claims against Hansell are barred by the Eleventh Amendment, especially where even Hansell admits that Plaintiff may still maintain his prospective claims for injunctive relief, and (2) Plaintiff's claims against Doar fail to allege that Doar was personally involved in the deprivation of Plaintiff's constitutional rights, an issue difficult to decide in the absence of a record.